UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TRACY LELIAERT,

Plaintiff,

v.                                                    CAUSE NO. 3:22-CV-359 DRL

CITY OF SOUTH BEND *et al.*,

Defendants.

OPINION AND ORDER

The defense seeks to exclude Tracy Leliaert's proposed expert witness, Chet Epperson, under

Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). The court

grants the motion.

BACKGROUND

On May 26, 2020, South Bend police officers began clearing a homeless encampment on city

property after prior notice and concerns about crime and COVID-19. Tracy Leliaert, a person with a

home who protested the clearing, refused to leave even when warned repeatedly. Officer Joshua Morgan

and Officer Ryan Williams eventually arrested her and two others for trespassing. She pursues excessive

force claims under the Fourth Amendment and a First Amendment right-to-assembly claim, though only

one claim remains today. The court's contemporaneous summary judgment ruling explains why and

offers a more exhaustive recitation of the facts, but this synopsis suffices for this separate motion.

Ms. Leliaert retained Chet Epperson to review the evidence and opine on police practices and

standards. Mr. Epperson is a former police chief with over four decades of experience under his belt [35-

1]. He earned a bachelor's degree in sociology and anthropology, and then a master's degree in public

administration from Rockford University. He has published and taught seminars on police standards. He

has served as a police practices consultant and appointed court monitor for police practices since 2015.

He proposes to offer three opinions:

1. The City of South Bend, Indiana, Officers Joshua Morgan, Ryan Williams, and Police Chief Scott Ruszkowski deviated from Nationally Accepted Principles of First Amendment Right to Assembly.

2. The City of South Bend, Indiana, Officers Joshua Morgan, Ryan Williams, and Police Chief Scott Ruszkowski deviated from Nationally Accepted Principles of Use of Force in Their Interactions with Tracey [sic] L. Leliaert.

3. The City of South Bend[,] Indiana and South Bend Police Chief Scott Ruszkowski Deviated from Nationally Accepted Standards of Internal Affairs Investigations and Early Identification Systems in the Complaint of Tracy Leliaert.

## STANDARD

A witness may testify in the form of an expert opinion when (1) the witness is "qualified as an expert by knowledge, skill, expertise, training, or education;" (2) the testimony is "based on sufficient facts or data;" (3) the testimony is "the product of reliable principles and methods;" and (4) the opinion "reflects a reliable application of the principles and methods to the facts of the case" in such a way that the testimony will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Although analysis under Rule 702 always remains flexible, *Daubert*, 509 U.S. at 594, the fundamental considerations of what makes expert opinion admissible are well understood, *see Constructora Mi Casita, S de R.L. de C.V. v. NIBCO, Inc.*, 448 F. Supp.3d 965, 970-71 (N.D. Ind. 2020).

In short, the Federal Rules of Evidence strike a balance between two competing concerns: apprehension of the free-for-all admission of unreliable theories that might baffle juries and a "stifling and repressive scientific orthodoxy" that might inhibit new truths or legitimate cases. *Daubert*, 509 U.S. at 596. While preserving that balance, the *Daubert* analysis is not a substitute for crossexamination, contrary and compelling evidence, thoughtful jury instructions, and other methods inherent in federal trials to challenge shaky evidence. *Id.*; *see also Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013). The proponent of expert testimony must establish its admissibility by a preponderance of the evidence. *See* Fed. R. Evid. 702; *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019).

The court needn't conduct an evidentiary hearing here. No party has requested one. The briefing, proffered expert report, and deposition testimony also permit the court to rule. *See, e.g.*, *Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998); *Target Mkt. Publ'g, Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1143 n.3 (7th Cir. 1998).

DISCUSSION

The defendants challenge each opinion. They argue that Mr. Epperson doesn't have the necessary facts or knowledge to reach his conclusions, that some of his opinions don't fit the case, and that he at times supplants the jury's role. They also argue that Mr. Epperson's reference to national standards is wrong and will mislead the jury. Ms. Leliaert leans heavily on Mr. Epperson's experience in police practices to justify each opinion.

The court begins with the easier points—the proposed first and third opinions (in reverse order)—particularly now with the summary judgment ruling. Unless proposed testimony speaks, without confusing or misleading the jury, to a relevant issue that the jury must decide, it has no meaningful bearing on the suit. *See* Fed. R. Evid. 403, 702; *see, e.g.*, *Hartman v. EBSCO Indus.*, 758 F.3d 810, 819 (7th Cir. 2014). In short, it does not fit. *See Daubert*, 509 U.S. at 591. To be helpful, an opinion must aid the jury to decide an issue of consequence. The court must determine whether an expert's "reasoning or methodology properly can be applied to the facts in issue," *id.* at 593, and whether the witness's knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a). Opinions must be tied to case facts and issues—that is, it must fit the case. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999).

Mr. Epperson intends to opine that the defendants deviated from certain standards concerning internal affairs investigations and early identification systems (third opinion). There is no such claim in this case, and the *Monell* claim against the City of South Bend cannot withstand summary judgment even with a proposed focus on a so-called pattern of failed investigations. The one complaint about Officer

Williams occurred five months after Ms. Leliaert's arrest; and the two complaints against Officer Morgan bear no similarity to the claim here or otherwise support a *Monell* theory of liability for a reasonable jury. The opinions neither fit nor serve the legitimate purpose of educating the jury, much less without substantial and overweighing confusion. *See* Fed. R. Evid. 403, 702. The court excludes this third opinion.

Mr. Epperson also proposes to opine about the First Amendment claim (first opinion), but this claim too cannot survive summary judgment as a matter of law. Indeed, Ms. Leliaert argues it largely as a recast Eighth Amendment claim (and an abandoned First Amendment claim), and the Supreme Court recently rejected her view under the Eighth Amendment. *See City of Grants Pass, Oregon v. Johnson*, 144 S. Ct. 2202, 2226 (2024). In short, the jury no longer needs any specialized knowledge, to the extent classified as such, from Mr. Epperson on the First Amendment. The opinion no longer fits and would likewise unduly confuse the jury without any measurable probative value. *See* Fed. R. Evid. 403, 702; *Daubert*, 509 U.S. at 591. Whether the City had a plan in place to remove and then safely house the homeless has no bearing on the First Amendment claim (or Eighth Amendment claim); and that proves truer still when no such claim survives at summary judgment.

In addition, his opinion lacks a sound factual basis and employs an unsound methodology. "An opinion witness must have a sound factual basis to be declared an expert." *Scci Hosps. of Am., LLC v. Home-Owners Ins. Co.*, 571 F. Supp.3d 942, 950 (N.D. Ind. 2021). Even if eminently qualified, experts cannot offer opinions based solely on their say-so. *See Kumho Tire*, 526 U.S. at 157; *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Expert testimony must be based on sufficient and known facts. Fed. R. Evid. 702(b), 703; *see Daubert*, 509 U.S. at 590; *see, e.g., Wasson v. Peabody Coal Co.*, 542 F.3d 1172, 1176 (7th Cir. 2008) (one sale was insufficient basis to calculate average of sales over twenty years). For instance, just because a person is a doctor doesn't mean she can answer all medical questions. *See, e.g., Gayton v. McCoy*, 593 F.3d 610, 617-18 (7th Cir. 2010) (allowing physician to opine about effects of vomiting on body but not pharmacological effects of drugs on heart).

Although not infrequently a point that might beg cross-examination rather than exclusion, one that goes to weight not admissibility, *see Forst v. Travelers Home & Marine Ins. Co.*, 2023 U.S. Dist. LEXIS 175274, 7-8 (N.D. Ind. Sept. 29, 2023) (citing cases); *see, e.g., Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000), this opinion has a glaring factual gap at the start that renders it unreliable—Mr. Epperson's opinion assumes Ms. Leliaert was homeless when she was not. Whether the City had a plan in place to remove and then safely house the homeless has no bearing on a First Amendment claim (or Eighth Amendment claim) for someone who was not homeless.

Mr. Epperson also acknowledges that whether the land was a public forum would make a difference to a First Amendment claim, but he admits he has no information to determine whether it was. He admits he hasn't done any investigation and doesn't have any facts that would make the tent city a public forum. His methodology requires consideration of any justification for the actions of officers, but he also passes over the laws and local ordinance under which the officers acted to regulate use of this property. He says he never looked at this.

Mr. Epperson just assumes Ms. Leliaert had a right to be there because, simply stated in his words, she was there and it was property owned by the City. His factual gaps thus reveal gaps in his methodology, and reveal his opinion to be barely more than his say-so. *See Kumho Tire*, 526 U.S. at 157. The "critical inquiry is whether there is a connection between the data employed and the opinion offered" and whether the expert employed the kinds of facts or data on which experts in the field would "reasonably rely." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 781 (7th Cir. 2017)(emphasis omitted); *see also* Fed. R. Evid. 703. Perhaps, given his experience and given further homework, he could offer testimony in another case concerned with best practices for law enforcement agencies to employ in dispersing homeless sites, but not in this case based on a First Amendment right to assemble for someone not homeless and subject to reasonable time, place, and manner restrictions as a matter of law. Ms. Leliaert has not met her burden in building a reliable connection between any data Mr. Epperson may have

gathered, including two position papers, and the First Amendment claim the jury must decide. The court excludes his first opinion.

The court thus turns to the one opinion (his proposed second opinion) that, at least on its face, seems to relate to a remaining claim—whether Officer Joshua Morgan used excessive force in arresting Ms. Leliaert. Mr. Epperson opines that Officer Morgan deviated from nationally accepted principles of use of force. But the jury needs no help here.[1]

The court will instruct the jury on the law—namely, that under the Fourth Amendment the officer could only use reasonable force, and that various non-exclusive factors may be considered by the jury to decide whether his actions were reasonable. *See* 7th Circuit Civil Pattern Jury Instrs. 7.09, 7.10. Mr. Epperson cannot provide help here. "Federal Rules of Evidence 702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of a case. . . . [Experts] cannot testify about legal issues on which the judge will instruct the jury." *United States v. Burge*, 711 F.3d 803, 813 n.5 (7th Cir. 2013); *accord Jimenez v. City of Chi.*, 732 F.3d 710, 721 (7th Cir. 2013).

The jury also is well positioned to decide whether Officer Morgan acted reasonably. Juries decide what is reasonable all the time, and the pattern instruction (and law) specific to a Fourth Amendment claim endows the jury with the ability to consider factors even the instruction has not outlined in recognition of the jury's capabilities. This isn't a complex use-of-force scenario. The jury is capable of listening to the testimony and watching the video recordings to assess the reasonableness of the officer's actions. This case is well within lay competence. *See Pena v. Leombruni*, 200 F.3d 1031, 1034 (7th Cir. 1999) (expert not needed to aid jury in deciding reasonableness of force under Fourth Amendment).

---

[1] Mr. Epperson also offers an opinion about Chief Ruskowski's use of force but then admits he used none. He also says Officer Williams violated nationally-accepted policy on use of force too, but he confessed he could not see what he deemed use of force in the video [35-2 Tr. 186]. He explained that Officer Williams used excessive force because he should not have arrested Ms. Leliaert at all, opining on a separate legal question [*id.* Tr. 123]. Ms. Leliaert doesn't really attempt to defend these opinions; she just falls back on Mr. Epperson's training and experience, but that doesn't meet her burden. And these opinions offer no help in preserving the claims against summary judgment, and ultimately do not fit once summary judgment has been entered on them.

This isn't a rarer case in which the jury needs help to understand the workings of a use-of-force tool or unusual technique or some other police practice outside its base of knowledge. Nor does Mr. Epperson really offer any opinion to aid the jury's understanding of some "neck restraint technique." The point instead is merely that this should not be done; but it seems even the SBPD officers agree that they are not trained to put a knee over an arrestee's neck and that such an action would be contra use-of-force policy. Mr. Epperson largely catalogues deposition testimony and observations of the videos, but these are factual and credibility matters well within the jury's ability to decide. In short, his opinion is unnecessary and unhelpful. *See* Fed. R. Evid. 403, 702; *Daubert*, 509 U.S. at 591; *United States v. Brown*, 871 F.3d 532, 539 (7th Cir. 2017) ("But an expert's role is to help the trier of fact to understand the evidence, not to draw conclusions *for* the fact finder when no help is needed.") (citation and quotations omitted).

Mr. Epperson intends to opine that Officer Morgan deviated from a nationally-accepted practice on less lethal encounters in using a knee over Ms. Leliaert's neck. But the Fourth Amendment standard for excessive force is an objective standard, *Graham v. Connor*, 490 U.S. 386, 396-97 (1989), and his testimony about standards of police practice are immaterial to determining what is objectively reasonable under the Fourth Amendment, *Thompson v. City of Chi.*, 472 F.3d 444, 454 (7th Cir. 2006); *see also Legg v. Pappas*, 383 F. Appx. 547, 550 (7th Cir. 2010). The question is whether Officer Morgan violated a constitutional right, not a perceived national policy—and not least a nationally-accepted practice, as characterized, based on something that by its own terms disclaims being a national standard. Whether certain law enforcement agencies endorse the policy has no bearing on whether Officer Morgan violated the Constitution. A reasonable jury could find—and has the competence to find—an officer's knee across an arrestee's neck to be excessive based on the totality of the not-so-complicated circumstances presented here, and without additional expertise lent to the record; whether the jury will do so must await a trial of course, but not expert testimony.

CONCLUSION

Ms. Leliaert has not met her burden to show the admissibility of Mr. Epperson's opinions. *See Downing v. Abbott Lab'ys*, 48 F.4th 793, 809 (7th Cir. 2022). Mr. Epperson may be qualified to testify in the right case given his training and experience, but his opinions are not suited to this one. Accordingly, the court GRANTS the motion to exclude expert testimony [34].

SO ORDERED.

August 20, 2024                                    *s/ Damon R. Leichty*
                                                   Judge, United States District Court